## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JANICE JENSEN, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| | Case No. 2:15-cv-00910-PMW |
| vs. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | Magistrate Judge Paul M. Warner |
| Defendant. | |

Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the

Acting Commissioner of Social Security (Commissioner) denying her claims for Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of

the Social Security Act (the Act).  After careful review of the entire record, the parties' briefs,

and arguments presented at a hearing held on September 22, 2016, the undersigned concludes

that the Commissioner's decision is supported by substantial evidence and free of harmful legal

error and is, therefore, AFFIRMED

This Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Id.* (citation omitted).  The Court may neither "reweigh the evidence [n]or

substitute [its] judgment for the Commissioner's."  *Id.* (citation omitted).  Where the evidence as

**Page 1**

a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, Plaintiff alleged that she became disabled in August 2012 due to bipolar disorder, memory loss, severe depression, and agitation (Tr. 220).  The administrative law judge (ALJ) followed the five-step sequential evaluation process for evaluating disability claims (Tr. 27-39).  *See generally* 20 C.F.R. § 404.1520(a)(4).[1]  As relevant here, the ALJ found that, although Plaintiff had several severe mental impairments, she retained the ability to perform work that required only understanding, remembering, and carrying out simple job instructions; the exercise of judgment requisite for performing simple, routine, repetitive work tasks commensurate to the unskilled occupational base; and brief and superficial contact with co-workers (Tr. 30-37).  The ALJ then relied on vocational expert testimony in finding that Plaintiff could not perform her past relevant work (Tr. 37).  However, the ALJ found that, under the framework of the Medical-Vocational Guidelines (the "Grids"), a finding of nondisability was appropriate as Plaintiff's social limitations would only have a slight effect on the unskilled occupational base (Tr. 37-38).  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2.  The ALJ thus concluded that Plaintiff was not disabled under the Act (Tr. 38-39).  The Court finds that the ALJ's factual findings are supported by substantial evidence in the record and that the correct legal standards were applied.

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2016 edition of 20 C.F.R. part 404, which governs DIB.  The corresponding SSI regulations at 20 C.F.R. part 416 are substantively the same.

**Page 2**

**I.      The ALJ Reasonably Weighed the Record Evidence and Adequately Articulated his Findings in Assessing Plaintiff's Residual Functional Capacity.**

Plaintiff argues that the ALJ erred in weighing the record evidence in assessing her residual functional capacity (*see* Pl. Br. 7-12).  The residual functional capacity assessment represents the most that a claimant can still do despite her functional limitations.  20 C.F.R. § 404.1545.  An adjudicator relies on the residual functional capacity assessment in determining whether or not an individual retains the ability to perform work—and, by extension, whether or not an individual is disabled within the meaning of the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(iv); 42 U.S.C. § 423(d) (defining disability as the inability to work at substantially gainful levels by reason of a severe impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months); *see also* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 ("the adjudicator's assessment of an individual's [residual functional capacity] may be the most critical finding contributing to the final determination or decision about disability").  Here, the Court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence considering the record as a whole and the correct legal standards were applied.  As such, the Court rejects Plaintiff's arguments.

Plaintiff asserts that "[t]here is no medical source opinion in the record that matches the ALJ's residual functional capacity findings" (Pl. Br. 8 n.1).  But there is no such requirement.  As the Tenth Circuit has repeatedly acknowledged, "there is no requirement in the regulations for a direct correspondence between [a residual functional capacity] finding and a specific medical opinion on the functional capacity in question."  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  "[T]he ALJ, not a physician, is charged with determining a claimant's [residual functional capacity] from the medical record."  *Howard v. Barnhart*, 379 F.3d 945, 949

**Page 3**

(10th Cir. 2004).  Moreover, the ALJ does not consider only medical source opinions; rather, the

ALJ must "consider all evidence in [the] case record" in deciding a disability claim.  *See*

20 C.F.R. § 404.1520(a)(3).  As highlighted by the evidentiary discussion in the ALJ's decision

(*see* Tr. 31), Plaintiff's allegations of severe social limitations were undermined by, among other

things, Plaintiff's ability to communicate with her friends on a daily basis (*see* Tr. 279).  The

ALJ reasonably assessed Plaintiff's residual functional capacity based on a consideration of all

of the relevant evidence—both medical and nonmedical.  *See* 20 C.F.R. §§ 404.1529(c),

404.1545.

Plaintiff argues that the ALJ erred because he did not include in the residual functional

capacity assessment all of the mental limitations opined by Dr. Brill (Pl. Br. 7-11).  Plaintiff also

argues the ALJ erred in considering the statement of her former employer, Ms. Stubbs (Pl. Br. 9).

The Court finds, however, that the ALJ discussed the various opinions—medical and

otherwise—and adequately discussed valid bases for ascribing less weight to certain evidence.

The ALJ explicitly stated that he was affording only partial weight to Dr. Brill's opined

residual functional capacity limitations (*see* Tr. 36).  The ALJ first set forth the entirety of

Dr. Brill's residual functional capacity opinion in his decision:

> [Plaintiff] has the residual functional capacity consistent with lower-level
> semi-skilled work-tasks (i.e., can be learned in one to three months).  Due to some
> inattention, [Plaintiff] will need a setting with no more than essential contact with
> supervisors, coworkers, and the public.  [Plaintiff] will need a work setting that
> does not place a priority on rapid task completion

(*see* Tr. 36, 74).  The ALJ then explained that, because he was assessing residual functional

capacity for *even less than lower-level semi-skilled work tasks*, he would not be including

Dr. Brill's opined restriction to "a work setting that does not place a priority on rapid task

completion" (*see* Tr. 36-37).  In short, the ALJ read Dr. Brill's restriction to "a work setting that

**Page 4**

does not place a priority on rapid task completion" *within the context of* the performance of lower-level semi-skilled work tasks.  The ALJ's inference that Plaintiff's ability for "rapid task completion" varied *depending upon* the skill level of the work task reasonably and logically flowed from the facts.  *See Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir. 1983) (when the evidence permits varying inferences, the court may not substitute its judgment for that of the ALJ).  Moreover, with respect to Dr. Brill's opined limitations in social interactions with supervisors and the public, the ALJ's evidentiary discussion highlighted that Plaintiff's allegations of severe social limitations were undermined by, among other things, Plaintiff's ability to communicate with her friends on a daily basis (*see* Tr. 31).  The ALJ's reasoning is sufficiently discernable.  *See Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979) ("While we may not supply a reasoned basis for the agency's action that the agency itself has not given . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (citations omitted)).

With respect to Ms. Stubbs' statement that Plaintiff had difficulty with her former work as a bank teller, the ALJ explained that he could not give this statement significant weight because it was overly restrictive based on the objective evidence and inconsistent with the preponderance of the opinions and observations by medical doctors in this case (Tr. 34-35).  An ALJ may give less weight to any opinion that is not well-supported by objective medical evidence and/or is inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(3), (c)(4); SSR 06-03p, 2006 WL 232993920, at *4 (explaining that although 20 C.F.R. § 404.1527 explicitly applies to only the evaluation of acceptable medical source opinions, the same factors enumerated can be applied in considering other opinion evidence).

**Page 5**

The Court finds that the ALJ articulated sufficient reasoning for finding that portions of Dr. Brill's opinions and the opinions of Ms. Stubbs were entitled to less weight.

Plaintiff also argues that the ALJ erred in not including any limitations with regard to her left knee (*see* Pl. Br. 11-12).  However, similar to the opinions of record, the ALJ was presented conflicting evidence regarding the nature and extent of Plaintiff's knee issues.  For example, while Plaintiff saw an orthopedic specialist for knee pain after an injury in early October 2012, treatment notes showed her pain gradually improved and she did not return to the orthopedic specialist again after October 2012 (*see* Tr. 333-36).  *See* 20 C.F.R. § 404.1529(c)(ii) (ALJ considers the location, duration, frequency, and intensity of symptoms in evaluating the reliability of a claimant's allegations).  In addition, there was evidence that Plaintiff declined physical therapy repeatedly (*see* Tr. 334, 336) and failed to comply with rehabilitative exercises (*see* Tr. 334).  *See* 20 C.F.R. § 404.1529(c)(v)-(vi) (ALJ considers treatment received and any other measures used to relieve symptoms in evaluating the reliability of a claimant's allegations).  The ALJ's decision to not assess any limitations with respect to Plaintiff's left knee is based on one reasonable interpretation of the evidentiary record.  Where there are multiple reasonable interpretations of the evidence, the Court must affirm the ALJ's determination.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.").

When viewed in its entirety, the record contains substantial evidence to support the ALJ's findings.  By law, this Court is not authorized to reweigh the evidence.  Even assuming *arguendo* that the Court might have arrived at a different conclusion on the same evidence, this Court's function is limited to determining whether the ALJ had substantial evidence to support **his** findings and decision.  *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (holding

**Page 6**

that even if the court believes the evidence is "equivocal," the court must nonetheless affirm if

the ALJ's decision is supported by substantial evidence and the correct legal standards were

used).  Because the ALJ's resolution of the conflicting record evidence is based on reasonable

inferences, the Court affirms.

**II.     The ALJ Reasonably Relied on the Grids as a Framework in Finding that Plaintiff
          Could Perform Other Work Existing in Significant Numbers in the National
          Economy.**

Plaintiff next asserts that, because she had nonexertional limitations, "vocational expert

testimony was needed to identify which jobs, if any, she could perform, given her specific

mental functional limitations" (Pl. Br. 15).  Where a claimant has nonexertional limitations, the

ALJ has the duty to determine whether those limitations would erode the unskilled occupational

base of the Grids.  SSR 83-12, 1983 WL 31253, at *2.  "Where the extent of erosion of the

occupational base is not clear, the adjudicator will need to consult a vocational resource."  *Id.*

However, "[i]n some instances, the restriction will be so slight that it would clearly have little

effect on the occupational base."  *Id.*  In short, when using the Grids as a framework, the ALJ is

not per se required to call a vocational expert.  In light of the particular nonexertional limitations

assessed in this case, and considering the agency regulations and rulings addressing these very

same limitations, the ALJ reasonably concluded that Plaintiff's nonexertional limitations "would

have only slight effect on the occupational base" (*see* Tr. 38).  Thus, the Court rejects Plaintiff's

challenge to the ALJ's use of the Grids as a framework.

If a claimant can perform other work in the national economy, then the ALJ will find that

she is not disabled within the meaning of the Act.  20 C.F.R. § 404.1520(g) (step five of the

sequential evaluation process).  In making this determination, the ALJ considers the claimant's

age, education, work experience, and residual functional capacity.  20 C.F.R. § 404.1520(g).

**Page 7**

The ALJ must then provide evidence demonstrating that the other work which a claimant can perform exists in significant numbers in the national economy.  20 C.F.R. § 404.1560(c)(2). This burden may be satisfied with vocational expert testimony or reliance on a rule in the Grids. *Heckler v. Campbell*, 461 U.S. 458, 461, 465, 470 (1983); *see also* 20 C.F.R. § 404.1566; 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00.  The Grids represent more than 2,500 separate unskilled occupations.  20 C.F.R. pt. 404, subpt. P, app. 2, sec. 203.00.  "Where a claimant's qualifications correspond to the job requirements identified by a rule, the [Grids] direct a conclusion as to whether work exists that the claimant could perform."  SSR 83-46c, 1983 WL 31275, at *3; *Campbell*, 461 U.S. at 461-62.  However, where a claimant's residual functional capacity does not meet the precise criteria of any of the grid rules, the Grids cannot direct a conclusion and only provide a frame of reference.  SSR 83-12, 1983 WL 31253, at *3.

Here, the ALJ reasonably assessed Plaintiff with the residual functional capacity for work that required only understanding, remembering, and carrying out simple job instructions; the exercise of judgment requisite for performing simple, routine, repetitive work tasks commensurate to the unskilled occupational base; and brief and superficial contact with co-workers (Tr. 30-37).  In light of these nonexertional limitations, Plaintiff's residual functional capacity did not match the exact criteria of any of the grid rules (Tr. 38).  However, except for the restriction to only brief and superficial contact with co-workers, these nonexertional limitations were commensurate with the intellectual and emotional demands of the unskilled occupational base of the Grids.  Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time."  *See* 20 C.F.R. § 404.1568(a). Moreover, "concentration is not critical" for unskilled work.  *See* Social Security Administration Program Operations Manual System (POMS) DI § 25020.010(B)(3), available at

**Page 8**

http://policy.ssa.gov/poms.nsf/lnx/0425020010.[2]   And with respect to the limitation to only brief

and superficial contact with co-workers, the ALJ aptly noted that SSR 85-15, 1985 WL 56857,

at \*4, instructs that

> [w]here there is no exertional impairment, unskilled jobs at all levels of exertion
> constitute the potential occupational base for persons who can meet the mental
> demands of unskilled work. ***These jobs ordinarily involve dealing primarily with
> objects, rather than with data or people,*** and they generally provide substantial
> vocational opportunity for [a] person with solely mental impairments who retain
> the capacity to meet the intellectual and emotional demands of such jobs on a
> sustained basis

(Tr. 38) (emphasis in original).  The ALJ relied on SSR 85-15 in concluding that Plaintiff's

limitations with regards to social interaction would have only slight effect on the unskilled

occupational base of the Grids (Tr. 38).  Accordingly, the ALJ reasonably concluded a finding of

"not disabled" was appropriate under the framework of the Grids (Tr. 38).

The Court finds that the ALJ articulated sufficient reasoning for his determination, and

this was not one of the "more complex cases" where the specialized knowledge of a vocational

expert was needed.  *See* SSR 83-12, 1983 WL 31253, at \*2.  As the ALJ satisfied his step-five

burden consistent with the requirements of the regulations, the Court affirms.

---

[2] For additional descriptions of simple, unskilled work, *see* SSR 82-63, 1982 WL 31390, at \*4;
SSR 83-10, 1983 WL 31251, at \*7; and SSR 96-9p, 1996 WL 374185, at \*9.

**Page 9**

## CONCLUSION

When viewed in its entirety, the record contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled.  Thus, the Court concludes that the ALJ's decision in this matter is supported by substantial evidence in the record and that the correct legal standards were applied.  Accordingly, Plaintiff's arguments fail as a matter of law, and IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

DATED this 30th day of November, 2016.

_____
PAUL M. WARNER
United States Magistrate Judge

**Page 10**